**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LONDON
CIVIL ACTION NUMBER _____**

**JOHN and JANE DOE, as the PARENTS,
NATURAL FRIENDS and GUARDIANS of
MARY DOE (a minor)**                                                                                   **PLAINTIFF**

**v.**

**BOARD OF EDUCATION OF
McCREARY COUNTY, KENTUCKY;
MICHAEL M. CASH, INDIVIDUALLY and in his
OFFICIAL CAPACITY as SUPERINTENDANT; and
TODD WATERS, INDIVIDUALLY and in his
OFFICIAL CAPCITY as PRINCIPAL of
McCREARY COUNTY MIDDLE SCHOOL**                                             **DEFENDANTS**

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**
_____

Come the Plaintiffs, John and Jane Doe, as the Parents, Natural Friends, and Guardians of Mary Doe (a minor), by counsel, and for their Complaint and Demand for Jury Trial made against the above-named Defendants, hereby state as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiffs are residents of the Commonwealth of Kentucky, residing in McCreary County, Kentucky.

2. Defendant, Board of Education of McCreary County, Kentucky ("Board"), is a governmental agency or unit organized and having its existence under the laws of the Commonwealth of Kentucky, having its main office and primary place of business in McCreary County, Kentucky.

3. Defendant, Michael M. Cash ("Cash"), is, upon information and belief, a resident and domiciliary of the Commonwealth of Kentucky and resides in McCreary County, Kentucky. At all times relevant to this Complaint and Demand for Jury Trial, Cash was the Superintendent of the Board, and possessed the ability to institute corrective measures in relation to the facts and claims raised below, and was otherwise the actual, apparent, and ostensible agent of the Board.

4. Defendant, Todd Waters (hereinafter "Waters"), is, upon information and belief, a resident and domiciliary of the Commonwealth of Kentucky and resides in McCreary County, Kentucky. Waters was, during the relevant time period, the Principal at McCreary County Middle School, and possessed the ability to institute corrective measures in relation to the facts and claims raised below, and was otherwise the actual, apparent, and ostensible agent of the Board.

5. This Court has subject matter jurisdiction over this action and personal jurisdiction over each Defendant. The amount in controversy is sufficient to meet this Court's minimal jurisdictional requirements, and venue is appropriate in this Court's London Division.

**FACTS**

5. Mary Doe was a student in the McCreary County School System. Beginning in fourth grade, she was placed on an Individual Education Plan ("IEP") because of a known disability. Almost immediately, Mary was subjected to bullying by both students and teachers in the school system because of her disability and IEP.

6. There is a pattern and practice of bullying in the McCreary County School System towards individuals with a disability and/or an IEP. For example, but by no means exclusively, these students are singled out from other students, are taken to different rooms for "instruction," but are actually given the answers to tests they are to take by the teachers. They are not provided

with any real education of any kind. Mary was told that she was not able to participate in extra-curricular activities at the school because of her IEP and disability.

7. Children with disabilities and/or an IEP in this school system are further mercilessly bullied by other students, with the full knowledge of school staff and administration. Mary was constantly called names such as "retard" and "stupid," and was further subjected to physical violence simply because of her disability.

8. John and Jane Doe removed Mary Doe from this school system and attempted to home school her for the remainder of her fourth grade year. However, a Board member came to their home and forced them to re-enroll Mary Doe in the school system for 5th grade.

9. Upon her re-enrollment, the bullying only intensified, and a threat of rape was made against her on social media by a school student. Mary approached a counselor at the school named Jeff Clark, and detailed the disability-based bullying occurring towards her. Mr. Clark responded by saying that he "can't do anything about it," and in an subsequent meeting, told John Doe this same thing.

10. The disability-based bullying towards Mary Doe only intensified. She was physically assaulted on 3 different occasions by 3 different students. She was smacked in the face by two students, and blatantly punched in the face by another. These incidents were reported to Waters and Cash, but nothing was done to stop the bullying or punish the attackers. Cash did not even attend a meeting he was supposed to attend along with Waters to discuss this bullying. The verbal abuse and hostile environment because of her disability only intensified.

11. Mary Doe was then photographed in the girls locker room in state of partial undress, and the photograph was shared on social media. This incident was reported and the Defendants did nothing to remedy the situation. A local law enforcement officer also refused to do anything

about this issue, instead indicating that if the Does continued to pursue this matter, the abusers could "retaliate" and that, if so, this law enforcement agent would not do anything to stop it.

12. Incredibly, the disability-based bullying was not limited to just students. In fact, teachers at the school, including Mrs. Lay and Mr. Strunk took part in bullying, harassing and shaming Mary Doe in class, in front of other students, because of her disability. Mrs. Lay told Mary Doe that she refused to help her with a work assignment, and when Mary Doe asked a question in class, Mrs. Lay looked to the rest of the class and asked who was smart enough to answer the question. Mary Doe, and other disabled students, were singled out by faculty and students for harassment, bullying and shaming. These matters were also reported to the Defendants, who did nothing to stop them. Indeed, the Plaintiffs reported the bullying, harassment, threats of violence and actual violence taken against their daughter for years to employees of the school system. Reports of same were made through the years to the elementary school principal; to school counselors; to an assistant principal; to principals; to teachers; to the school nurse; to Waters; to Cash; and to other administrators, all of whom were deliberately indifferent to same.

13. With constant verbal and physical attacks against her because of her disability, and after seeing that these Defendants and other employees of the Board were not going to do anything about it, John and Jane Doe were forced to enroll Mary Doe in HomeBound.

14. Mary Doe, in addition to being denied educational opportunities, has also experienced severe mental anguish and distress as a result of these instances culminating in suicide threats and intensive psychological counseling.

## COUNT I

### VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AND KRS CHAPTER 344

15. Title II of the Americans with Disabilities Act of 1990, and KRS Chapter 344, prohibit disability discrimination by public schools.

16. Mary Doe was bullied and harassed because of her actual, perceived and record of having a disability.

17. The bullying was sufficiently serious so as to create a hostile school environment, in that it was severe and pervasive so as to alter the conditions of Mary Doe's education and create an abusive educational environment.

18. The Defendants, board employees and other officials were actually aware of the disability-based bullying towards Mary Doe.

19. The Defendants were deliberately indifferent to this known disability-based bullying, and their response to this harassment and bullying was clearly unreasonable in light of the known circumstances. The Defendants' acts and failures to act were in of themselves discriminatory acts towards Mary Doe.

20. Mary Doe is and was disabled under these statutes; she was otherwise qualified for participation in the educational programs; and she was excluded from, denied the benefits of, and subjected to discrimination under these educational programs because of her disability.

21. As a proximate and direct result of the Defendants' violations of Title II of the Americans with Disabilities Act of 1990 and KRS Chapter 344, Mary Doe (through her parents) is entitled to recover compensatory damages from the Defendants, along with her court costs and attorney's fees, all in an amount as of yet unknown but sufficient to meet this Court's minimal

jurisdictional requirements. Mary Doe is further entitled to recover punitive damages from these Defendants under the ADA.

## COUNT II

### VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973

22. Section 504 of the Rehabilitation Act of 1973 requires the Board to provide equal educational opportunities to students with disabilities.

23. Mary Doe was bullied and harassed because of her actual, perceived and record of having a disability.

24. The bullying was sufficiently serious so as to create a hostile school environment, in that it was severe and pervasive so as to alter the conditions of Mary Doe's education and create an abusive educational environment.

25. The Defendants, board employees and officials were actually aware of the disability-based bullying towards Mary Doe.

26. The Defendants were deliberately indifferent to this known disability-based bullying, and their response to this harassment and bullying was clearly unreasonable in light of the known circumstances. The Defendants acts and failures to act were in of themselves discriminatory acts towards Mary Doe.

27. As a proximate and direct result of the Defendants' violations of Section 504 of the Rehabilitation Act of 1973, Mary Doe (through her parents) is entitled to recover compensatory damages from the Defendants, along with her court costs and attorney's fees, all in an amount as of yet unknown but sufficient to meet this Court's minimal jurisdictional requirements. Mary Doe

is further entitled to recover punitive damages from these Defendants under the Rehabilitation Act.

## COUNT III

### NEGLIGENCE AND GROSS NEGLIGENCE

28. The special relationship formed between a school district and its students imposes an affirmative duty on the district, its faculty and administrators, to take all reasonable steps to prevent foreseeable harm to its students.

29. The Defendants owed the Plaintiff a duty to act as reasonably prudent schools and administrators would act in the same or similar circumstances. The Defendants owed duties to Mary Doe to provide her with a safe school environment, as well as to properly investigate reports of bullying and to take and take appropriate action to insure her safety. The Defendants had specific duties to react to and prevent the known harassment and bullying of Mary Doe, and their actions and inactions in responding to same were not discretionary but rather ministerial.

30. The Defendants breached these duties owed to Mary Doe, and their actions and omissions constitute the torts of negligent supervision, retention and investigation.

31. The Defendants' actions and omissions are not merely negligent, but constitute gross negligence in that they exhibited a reckless disregard for the rights of Mary Doe.

32. As a direct and proximate result of the Defendants' negligence and gross negligence, Mary Doe is entitled to recover (through her parents) both compensatory and punitive damages from these Defendants in an amount as of yet unknown but sufficient to meet this Court's jurisdictional requirements.

WHEREFORE, Plaintiff respectfully requests the following relief from this Court:

1. Trial by jury;

2. Compensatory damages;

3. Punitive damages;

4. Court costs and attorneys' fees;

5. Pre and Post-Judgment Interest on all such amounts at the highest allowable rate; and

6. Any and all other relief, equitable or otherwise, to which Plaintiff may appear entitled.

        Respectfully submitted,

        ARNOLD & MILLER, PLC

        /s/ Christopher D. Miller
        401 West Main Street, Suite 303
        Lexington, Kentucky 40507
        Telephone:  (859) 381-9999
        Facsimile:  (859) 389-6666
        E-mail:  cmiller@arnoldmillerlaw.com

        AND

        Edward E. Dove
        201 West Short Street
        Lexington, Kentucky 40507
        Telephone:  (859) 252-0020
        E-mail:  eddove@windstream.net